# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| **MISSOURI COALITION FOR THE** | ) | |
| **ENVIRONMENT FOUNDATION, a** | ) | |
| **non-profit corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-04169-CV-C-NKL** |
| | ) | |
| **LISA P. JACKSON, Administrator of the** | ) | |
| **United States Environmental Protection** | ) | |
| **Agency; and THE UNITED STATES** | ) | |
| **ENVIRONMENTAL PROTECTION** | ) | |
| **AGENCY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court are the cross-motions for summary judgment by Plaintiff

Missouri Coalition for the Environment Foundation ("the Coalition") [Doc. # 34] and

Defendants Lisa P. Jackson and the United States Environmental Protection Agency

[Doc. # 31]. The Coalition asks the Court to issue a declaratory judgment finding that 1)

Missouri's 2005 submissions of water quality standards did not meet the requirements of

the Clean Water Act because these submissions did not assign proper

"fishable/swimmable" uses to all of Missouri's waters; 2) the EPA's approval of

Missouri's 2005 water quality standards was arbitrary, capricious or an abuse of discretion

under the APA because these standards did not assign proper "fishable/swimmable" uses

Case 2:10-cv-04169-NKL   Document 64   Filed 02/16/12   Page 1 of 21

to all of Missouri's waters; and 3) the EPA's failure to exercise its discretionary authority under Section 303(c)(4)(B) of the Act to promulgate new or revised water quality standards for Missouri is arbitrary, capricious, and an abuse of discretion under the APA. The Coalition also seeks an injunction either 1) setting aside the EPA's approval of Missouri's 2005 water quality submissions or 2) ordering the EPA to make a determination that new or revised water quality standards assigning proper uses to all of Missouri's waters are needed.

For the following reasons, the Court grants Defendants' Motion for Summary Judgment [Doc. # 31] and grants in part and denies in part Plaintiff's Motion for Summary Judgment [Doc. # 34].  Specifically, the Court finds that 1) Missouri's 2005 submissions of water quality standards did not meet the requirements of the Clean Water Act; 2) the EPA did not act arbitrarily and capriciously in approving Missouri's 2005 water quality submissions; and 3) EPA's decision over whether to exercise its discretionary authority under Section 303(c)(4)(B) of the Act to promulgate new or revised water quality standards for Missouri is committed to the EPA's discretion by law and thus unreviewable by the Court.

Also pending before the Court is the Coalition's Motion to Strike [Doc. # 44] the Response by Intervenor Missouri Department of Natural Resources.  The Coalition's Motion to Strike is DENIED.

## I.  Background

The Coalition is a state wide non-profit membership corporation that engages in a

broad range of activities involving environmental issues, including education, public engagement and legal action. Defendant EPA is a federal agency charged with administering and enforcing the Clean Water Act. The Coalition and its members claim injury by the EPA's failure to enforce the Clean Water Act, including the EPA's failure to determine whether Missouri's water quality standards are consistent with the requirements of the Clean Water Act. [Doc. # 34-1 at 2].

The primary objective of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 101(a)(2) of the Act states that wherever attainable, a national water quality goal should be established which provides for "the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water," commonly referred to as the "fishable/swimmable uses." *Id*. § 1251(a)(2). The Act makes states initially responsible for assigning uses for its waterways and creating water quality standards consistent with these uses and the water quality criteria that support each use. 33 U.S.C. § 1313.

Section 303(c)(3) of the Act requires states to review their water quality standards at least once every three years, known as a "triennial review." *See* 33 U.S.C. § 1313(c)(1) (1988). EPA regulations require states in their reviews to designate fishable/swimmable uses to state waters. *See e.g.* 40 C.F.R. § 131.20(a); 131.6(a); 131.10. If such uses are not assigned, states must perform a valid scientific study, known as a Use Attainability Analysis (UAA), showing these uses cannot be achieved. 40 § C.F.R. § 131.10 (j). After

3

this review, states must submit the results of the review to the EPA,[1] which then has the duty to review any new or revised standards adopted by the states to determine if the standards are consistent with the Act, including whether the proper uses are assigned. *See id.* § 1313(c)(2)(A), (c)(3). If the EPA disapproves the standards, the state must correct the deficiencies within ninety days after the date of notification, or the Administrator of the EPA must then promulgate such standards as are consistent with the requirements of the Act. *See* 33 U.S.C. § 1313(c)(3), (c)(4)(A).

The Act also contains a discretionary clause which allows the EPA Administrator to promulgate standards for the states regardless of whether the state submitted revised standards to the EPA. Section 303(c)(4)(B) states that "in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this Act," the Administrator "shall promulgate any revised or new standard under this paragraph not later than ninety days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standards which the Administrator determines to be in accordance with this Act." 33 U.S.C. § 1313(c)(4)(B).

The State of Missouri's water quality standards contain lists of lakes and streams; the listed waters are known as "classified waters." Any lakes and streams not included in the lists are known as "unclassified waters." [Doc. # 34-1 at 2-3]. Only the classified

---

[1] *See e.g.* 40 C.F.R. § 131.20(a); 131.6(a); 131.10.

4

waters have been assigned uses and the water quality criteria which accompany those uses. [Doc. # 34-1 at 3]. Missouri has not assigned uses for its unclassified waters. Thus, there is no default fishable/swimmable designation for those waters.

On September 8, 2000, U. Gale Hutton, Director of Water, Wetlands and Pesticides for EPA Region 7, sent a letter to Stephen Mahfood, Director of Missouri Department of Natural Resources, in which she reiterated the language provided in Section 101(a)(2) of the Act, concerning the national goal of water quality to protect fishable and swimmable uses. She also stated that the EPA's regulation at 40 C.F.R. § 131 "interprets and implements these provisions by requiring that water quality standards provide for a default use designation of 'fishable/swimmable' unless those uses have been shown through use attainability analysis to be unattainable." She continued by stating that

> [I]t is the Agency's view that the States must protect unclassified or unlisted waters as well as classified waters for that default use. We note that although unlisted (i.e. unclassified) waters are protected by the general criteria in the Water Quality Standard, there is no clear default use-designation language in Missouri's WQS's for "unclassified waters." This is an issue which EPA will want to discuss during the triennial review.

[Doc. # 34-1 at 3].

Missouri did not undertake a review of or revisions to its water quality standards from 2000-2003.

In 2005, Missouri held its next triennial review. Missouri formally proposed a rule revising Tables G and H of the Mo. Code Regs. Ann. Tit. 10, § 20.8.031, assigning

5

fishable/swimmable uses to some, but not all, of the waters of the United States within Missouri. Tables G and H are the sections in which uses are assigned to waters within Missouri [AR 162].

Missouri's Clean Water Commission adopted a final order of rulemaking on September 7, 2005. The final rule revised Mo. Code Regs. Ann. Tit. 10, § 20.7.031, Tables G and H, by assigning fishable/swimmable uses to some state waters and submitting use attainability assessments (UAAs) for some additional waters to which the state had assigned uses other than fishable/swimmable. Missouri did not assign any uses to the waters not listed in the tables, and thus standards for unclassified waters (by definition, the ones not listed in the tables) were not submitted by Missouri to the EPA. After the Clean Water Commission approved the final rulemaking, the Coalition wrote to the EPA Region 7 requesting that it disapprove Missouri's water quality standards and promulgate new ones because of a failure to assign uses to the majority of Missouri's waters. The EPA received this document but never responded to the request. [Doc. # 34-1 at 6]. On February 15, 2006, the Missouri Department of Natural Resources transmitted the results of the triennial review to the EPA Region 7 for review. The Attorney General certified the submission on March 27, 2006. [Doc. # 34-1 at 6].

On April 28, 2006, the EPA assigned uses to some of Missouri's classified waters [Doc. # 34-1 at 6]. Missouri submitted 141 UAAs for some Missouri waterbodies, and the EPA deferred consideration of these until October 2006. On October 31, 2006, the EPA approved some of the UAAs, removing the fishable/swimmable use from those

6

waters. It disapproved some other UAAs, finding them inadequate for removing a use. [Doc. # 34 at 7]. The EPA did not address the waters which neither had uses assigned nor UAAs performed. On February 20, 2007, the EPA completed its review of Missouri's water quality standards.[2] [Doc. # 34-1 at 7].

The Coalition brought this suit in federal court, alleging several claims under the APA. The first claim alleges that the EPA's decision during the 2006 triennial review process, to neither approve or disapprove Missouri's failure to assign uses to all its waterways, was arbitrary and capricious under the APA. The Coalition's second claim alleges that the EPA's failure to exercise its discretionary authority under Section 303(c)(4)(B) of the Act to promulgate new or revised standards for Missouri to bring it into compliance with the Clean Water Act was arbitrary and capricious under the APA. The third claim is that the EPA's denial of the Coalition's 2005 petition, which asked the EPA to disapprove Missouri's new or revised water quality standards and then promulgate new water quality standards for the State, was arbitrary and capricious.

## II. Discussion

### A. Whether Missouri's Water Quality Standards are Unlawful

The Clean Water Act and the EPA's own regulations require states to review all

─────────────────────

[2] On April 27, 2007, and on June 30, 2009, the EPA approved additional use designations of classified waters. Pursuant to the settlement of a 2003 lawsuit between the EPA and the Coalition, the EPA extended the date for its approval/disapproval of the assignment of uses to the Mississippi River. On December 12, 2008, and October 29, 2009, the EPA disapproved the use assigned. [Doc. # 34-1 at 7].

existing water quality standards and submit these standards to the EPA upon completion

of the triennial review. *PUD NO. 1 of Jefferson County v. Wash. Dep't of Ecology*, 511

U.S. 700, 704 (1994) (interpreting Section 303 of the Act to require states to "institute

comprehensive water quality standards establishing water quality goals for all intrastate

waters"); 33 U.S.C. § 1311(b)(1)(c); 1313; 40 C.F.R. § 131.20(a);[3] 40 C.F.R. §

131.20(c);[4] *see also National Wildlife Federation v. Browner*, 127 F.3d 1126, 1130

(D.D.C. 1997) ("EPA concedes that states are required to submit existing water quality

standards to the EPA upon completion of a triennial review"). Both the Act and

regulations require these water quality standards submitted by the state to, at a minimum,

include the assignment of fishable/swimmable uses to state waters. *See e.g.* 40 C.F.R. §§

131.20(a); 131.6(a)[5]; 131.10. If such uses are not assigned, states must perform a valid

scientific study showing these uses cannot be achieved. 40 C.F.R. § 131.10 (j). If a given

water body remains without a designated use, it remains unprotected by the water quality

criteria which are required to accompany a use designation, and thus remains vulnerable.

---

[3] 40 C.F.R. § 131.20(a) states in part that "[a]ny water body segment with water quality standards that do not include the uses specified in Section 101(a)(2) of the Act shall be re-examined [by the State] every three years to determine if any new information has become available."

[4] 40 C.F.R. § 131.20(c) states in part that "[t]he State shall submit the results of the review... to the [EPA] for review and approval, within 30 days of the final State action to adopt and certify the revised standard, or if no revisions are made as a result of the review, within 30 days of completion of the review."

[5] 131.6 provides a list of elements which "must be included in each state's water quality standards submitted to EPA for review," including "[u]se designations consistent with the provisions of sections 101(a)(2) and 303(c)(2) of the Act."

8

Here, Missouri clearly did not submit any uses for its unclassified waters during the 2005 triennial review process. In fact, the record indicates that Missouri has never submitted a review of the water quality standards of the unclassified waters to the EPA. As many of the waters within the state remain unprotected with the required fishable/swimmable default uses, and there is no evidence that a use attainability analysis has been performed on these waters, the Court finds that Missouri's review of its water quality standards stands in clear violation of the Clean Water Act's provisions discussed above.

**B.      Whether the EPA's Approval of Missouri's Water Quality Standards Was Arbitrary, Capricious or an Abuse of Discretion**

The Coalition argues that the EPA's review of Missouri's water quality standards during the 2006 triennial review process was arbitrary and capricious. The Coalition focuses its argument mainly on the fact that the EPA failed to disapprove Missouri's water quality submissions during the triennial review process even though the state was in clear violation of the Clean Water Act when it failed to assign uses to unclassified water.

Before analyzing the arbitrary and capricious claim, the Court must discuss the statutory and regulatory requirements imposed upon the EPA in the triennial review process. As stated above, Section 303(c) requires states to submit any new or revised standards developed during triennial review to the Administrator. 3 U.S.C. § 1313(c)(2)(A). Upon receipt of the state's submissions, the EPA's obligations are specified under Section 303(c)(3):

9

If the Administrator, within sixty days after the date of submission of the revised or new standard, determines that such standard meets the requirements of this chapter, such standard shall thereafter be the water quality standard for the applicable waters of that State. If the Administrator determines that any such revised or new standard is not consistent with the requirements of this chapter, he shall not later than the ninetieth day after the date of submission of such standard notify the State and specify the changes to meet such requirements.

3 U.S.C. § 1313(c)(3).

The Act also specifies that the revised or new water quality standard shall consist of "the designated uses of the navigable waters involved and the water quality criteria for such waters based upon such uses." 33 U.S.C. § 1313(c)(2)(A).

The EPA's mandatory duty in the Act is clearly limited by the plain text of the Act and the agency's regulations to approval or disapproval of the revised or <u>new</u> standards rather than the entirety of the submissions which Missouri is required to submit during the triennial review process. The text of 303(c)(3) distinctly refers twice to "revised or new standards" when describing the duties of the Administrator to either approve or specify changes to the standards. The regulations cited by the Coalition also do not show an intent by the EPA to expand the scope of the mandatory duty to include approval or disapproval of existing water quality standards. For example, 40 C.F.R. § 131.6 (a), cited by the Coalition, concerns the minimum requirements to be followed by the states when they submit water quality standards to the EPA, without addressing any mandatory duty by the EPA to approve or disapprove state submissions at that time. 40 C.F.R. § 131.20 similarly outlines the procedures to be followed by states when

10

reviewing and revising their water quality standards, and does not address the EPA's duties regarding state submissions. 40 C.F.R. § 131.5, which the Coalition also cites, appears to concern only the duty of the EPA under Section 303(c) to approve or disapprove revised or new standards submitted by a state.

The Coalition argues that if the EPA is required only to approve or disapprove revised or new standards, it effectively allows states to choose to revise nothing and thus bypass the EPA review of their water quality standards altogether. However, as the EPA points out, Congress provided an avenue to remedy any such recalcitrance by including within the Act a discretionary clause, Section 303(c)(4)(B), which allows the EPA to promulgate water quality standards for States when necessary to implement the provisions of the Act. However, if, as the Coalition argues, the Act places a duty upon the EPA to review all omissions by a state as well as its submissions during the triennial review process, it would force the EPA to review the entirety of a state's water quality standards each time that a state submitted revised standards covering only some of the waters within the state. This would render the EPA's discretionary authority under section 303(c)(4)(B) superfluous, as there would be no need for the EPA to use its discretion to independently promulgate revised or new standards.

Even though there is no mandatory duty to approve or disapprove Missouri's water quality standards, which were not revised during the triennial review, the Court must still consider the Coalition's claim that in this particular situation, the EPA's approval of Missouri's submissions was arbitrary or capricious in light of the EPA's existing policies.

11

An agency's decision is arbitrary or capricious if it is not "based upon consideration of the relevant factors and . . . there has been a clear error of judgment." *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 822 (8th Cir. 2006) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). The court must uphold an agency's action if it is "supportable on any rational basis." *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004).

The Coalition argues that the EPA acted arbitrarily by disregarding its own policy that all state waters should be assigned fishable/swimmable uses. In support of its argument, the Coalition discusses statements by the EPA in its Guidelines, Handbook, and particularly, a 2000 Letter, which the Coalition alleges all establish an the EPA policy that the EPA must approve or disapprove the standards for all waters. Based on these documents, the Court finds that the EPA has long manifested a general policy that all waters should be protected for the default uses, fishable/swimmable. *See e.g.* Envt'l Prot. Agency, Guidelines for Developing or Revising Water Quality Standards, 1, 4 (1973) (stating that "all waters should be protected for recreational uses in and/or on the water and for the preservation and propagation of desirable species of aquatic biota as part of the national water quality standards program"). However, the documents cited by the Coalition do not impose a clear duty upon the EPA to disapprove a state's revised or new submissions during the triennial review process simply because the state has failed to assign uses to all of its waterbodies. For example, the 2000 letter cited by the Coalition simply states that the EPA "will want to discuss" during the triennial review the absence

12

of default use designations for Missouri's unclassified waters. This language does not indicate that the EPA's decision to approve Missouri's revised submissions during the triennial review is dependent upon on Missouri assigning water quality standards for all of Missouri's waterbodies.

The Coalition also points to other actions taken by the EPA as evidence that the agency acted in an arbitrary and capricious manner when overlooking the deficiencies in Missouri's submissions. For example, the EPA initially rejected Missouri's February 2006 submission of its revised water quality standards on the grounds that Missouri failed to include certification by the State Attorney General. Failure to include this certification is a violation of 40 C.F.R. § 131.6(e), while the failure of the state to submit its existing water quality standards is a violation of subsection (a) of the same regulation. The Coalition claims that this differing treatment of the two provisions is clearly arbitrary as the "EPA ignored the much more serious (and central-to-its-mission) failure to assign uses, but immediately rejected the submission for its failure to include the certification." [Doc. # 34-1 at 14]. However, the Coalition provides no authority which would show that the EPA lacked a rational basis for its actions here. Requiring certification for Missouri's submissions appears entirely rational, as it ensures that the EPA is reviewing the state's officially sanctioned submissions of the revised or new standards rather than some tentative or unapproved version. As the EPA has a mandatory duty to review such standards as part of the triennial review process, certification thus directly bears upon a required statutory duty under the Act. However, as stated above, the Act and regulations

13

do not impose a duty on the EPA to approve existing standards, or to take action because standards have never been assigned. Without any evidence on the record that such a nonmandatory duty was more "essential" to act upon during that particular triennial review process, the Court will not second guess the EPA's own on-the-ground prioritizations.

Further, the Coalition argues that the EPA acted arbitrarily because it did nothing about Missouri's inaction concerning the unclassified waters but did choose to exercise its authority to disapprove some of Missouri's revised standards during the 2006 triennial review process on the grounds that these standards did not assign fishable/swimmable uses to certain waters [Doc. # 34-1 at 14]. However, the EPA's action with regards to Missouri's revised standards is part of the EPA's mandatory duty under the Act to review revised or new standards and thus the EPA cannot be said to be acting arbitrarily in failing to exercise a non-mandatory duty simultaneously during the triennial review process.

Given the lack of a statutory or regulatory mandate, as well as any clear promise or past policy by the EPA cited by the Coalition which would require the agency to approve or disapprove Missouri's omissions during the triennial review process, the Court does not find that the EPA acted arbitrarily and capriciously when it approved Missouri's revised or new standards in 2006, despite Missouri's failure to submit proper uses its unclassified waters.

     **C.**    **Whether the EPA's Failure to Promulgate Default Uses for Missouri's**

### Unclassified Waters was Arbitrary, Capricious and an Abuse of Discretion

The Coalition also argues that the EPA's failure to exercise its discretionary authority under Section 303(c)(4)(B) of the Act to promulgate new or revised water quality standards for Missouri was arbitrary, capricious, and an abuse of discretion under the APA. Section 303(c)(4)(B) states that the Administrator shall establish a revised or new water quality standard "in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter." 33 U.S.C. § 1313(c)(4)(B). Though the EPA was not obligated to consider Missouri's unclassified waters when exercising its mandatory duty to approve or disapprove the state's revised or new standards under 303(c)(3), the Court now must consider whether the EPA acted arbitrarily in not using its discretion to promulgate regulations ordering Missouri to follow federal law by submitting uses for both its classified and unclassified waters.

The Coalition brings this claim under Section 706(2)(A) of the APA, which allows courts to "hold unlawful and set aside agency action, findings, and conclusions found to be...arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A). For this claim to be reviewed by the Court, it must meet three threshold requirements under the APA. First, the agency action in question must not be "committed to agency discretion by law," as such actions are unreviewable by Courts under Section 701(a)(2) of the APA. Second, the agency inaction alleged must fit

within the legal boundaries of 706(2) review of "agency action." Finally, the agency action must be a "final agency action" under Section 704.

The Court first turns to the issue of whether the EPA's action is judicially reviewable. There is a presumption of judicial review of most final agency actions, but this presumption does not apply when (1) a statute precludes judicial review or (2) agency action is committed to agency discretion by law. *See Tamenut v. Mukasey*, 521 F.3d 1000, 1003-04 (8th Cir. 2008).

The Clean Water Act does not explicitly address the issue of judicial review of the EPA's discretion under Section 303(c)(4)(B). Thus, the Court must turn to whether the EPA's authority under Section 303(c)(4)(B) is committed to agency discretion by law. This exception is a narrow one, applicable "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26 (1945)), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed.2d 192 (1977). In determining whether there is law to apply, both the nature of the administrative action and the statutory language and structure are considered. *Tamenut*, 521 F.3d at 1003-004. The "absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry, generally supports the conclusion that the agency action is committed to agency discretion by law." *Id.*

16

The Court finds that the EPA's authority under Section 303(c)(4)(B) is committed to agency discretion by law. The Court can locate no language in either the statue or the regulations which identifies the factors to be used by the agency in deciding whether to exercise its discretion under Section 303(c)(4)(B). The discretionary clause itself states only that:

> (4) the Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved....(B) in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter.

33 U.S.C. § 1313(c)(4)(B).

This clause specifies no standard as to when a revised or new standard should be issued, other than when the Administrator determines that it is necessary to "meet the requirements of this chapter." Such broad language cannot subject the EPA to judicial review for failing to exercise its discretion. If the Court were to determine that the EPA acted arbitrarily whenever rulemaking is necessary to ensure compliance with the Clean Water Act, it would strip the agency of its discretion under the clause. The agency would essentially be forced to act whenever a state was not in compliance with the Act. Though the Coalition argues that the language of 303(c)(4) indicates that Congress has "prescribed bounds" to the EPA's discretion, it does not identify any concrete standards which the Court could use to evaluate whether the EPA was properly exercising, or failing to exercise its discretion, in any given situation.

17

Nor do the regulations provide the necessary guidance to determine when the agency must exercise its discretion. It is true that the Act and regulations do require the States to review and submit all existing water quality standards to the EPA upon completion of a triennial review.[6] They also require these water quality standards submitted by the state to, at minimum, include the assignment of fishable/swimmable uses to state waters.[7] However, these regulations appear to simply reiterate the requirements of the Act. No guidance is provided as to when and under what circumstances the EPA must exercise its discretion to force States back into compliance when they commit these violations.

The Coalition appears to ask the Court to find the EPA's inaction here as arbitrary and capricious on the grounds that Missouri's violations are longstanding and obvious in that "[i]t is apparent to any observer that all Missouri waters have not been so designated [with fishable and swimmable uses]." [Doc. # 42 at 6]. However, the Coalition points to no guidance in the statute or regulations which would inform the Court as to how longstanding a violation must be, or what level of severity must be reached, before the EPA has a duty to exercise its discretion in addressing the violations. There are a variety

---

[6] *See PUD NO. 1 of Jefferson County v. Wash. Dep't of Ecology*, 511 U.S. 700, 704 (1994) (stating that Section 303 of the Act requires states to "institute comprehensive water quality standards establishing water quality goals for all intrastate waters"); 33 U.S.C. § 1311(b)(1)(c); 1313; 40 C.F.R. § 131.20(a); 40 C.F.R. § 131.20(c).*S ee also National Wildlife Federation v. Browner,* 127 F.3d 1126, 1130 (D.D.C. 1997) ("EPA concedes that states are required to submit existing water quality standards to the EPA upon completion of a triennial review").

[7] *See e.g.* 40 C.F.R. § 131.20(a); 131.6(a); 131.10. If such uses are not assigned, states must perform a valid scientific study showing these uses cannot be achieved. 40 C.F.R. § 131.10 (j).

Case 2:10-cv-04169-NKL   Document 64   Filed 02/16/12   Page 18 of 21

of factors which potentially could be important for the EPA when deciding whether to promulgate regulations for a specific state at any given time. A state's progress in improving its water quality standards, its available resources, the severity of the state's violations when compared to those of other states–each of these factors, among others, could affect the EPA's decision of whether or not to act to promulgate regulations at any given time. Given the absence of legal standards for the Court to apply in judging the EPA's exercise of its discretion, the Court finds that the EPA's refusal to promulgate regulations under 303(c)(4)(B) is committed to agency discretion by law and is unreviewable by the Court.

As the Court finds that the agency's actions under 303(c)(4)(B) are not subject to judicial review, the Court does not need to address the other procedural arguments raised by the parties including whether the EPA's failure to act here constitutes a final agency action. As the agency's actions are committed to its own discretion by law, the Court also need not consider the issue of whether the agency's failure to exercise its discretion was arbitrary or capricious.

**D.     Whether the EPA's Inaction on the Coalition's 2005 petition was Arbitrary or Capricious**

The Coalition argues also that the EPA's failure to act upon the Coalition's 2005 petition was arbitrary and capricious under Section 706(2) of the APA. The petition asked the EPA to disapprove "the revised Missouri standards for wetlands" and, "if the State fails to submit within 90 days thereafter revised water quality standards that

19

designate beneficial uses," then the EPA should promulgate such rules. [Doc. # 34-11 at 9]. To the extent that this petition concerns the EPA's mandatory duty under Section 303(c)(3), any denial would not constitute an arbitrary and capricious action under Section 706(2), for the reasons discussed in Section II.B above.

However, the Coalition appears to argue in its briefing that the petition also concerned the EPA's exercise of its discretion under the Act's discretionary clause, Section 303(c)(B)(4). Because an agency denial of a rulemaking petition is considered final agency action under the APA, thus conferring a right to judicial review, the Court would normally consider first the threshold question of whether the EPA's failure to respond to the petition constitutes final agency action. *See* 5 U.S.C. §§ 704. However, as Section 303(c)(B)(4) is committed to agency discretion by law, the Court may not review the agency's exercise of its discretion under this clause and thus does not need to consider whether the petition constitutes final agency action. The Coalition did not argue that the failure of the EPA to respond to a petition for rulemaking in itself constitutes an actionable claim under the APA, Clean Water Act, or otherwise.

### E. Motion to Strike Response by Missouri Department of Natural Resources

Also, pending before the Court is a Motion to Strike [Doc. # 44] the Response of Intervenor Missouri Department of Natural Resources [Doc. #37]. This Motion is hereby DENIED. The Court did not consider the Intervenor's response when ruling on the merits of the case and therefore the intervention of MDNR could in no way prejudice the

interest of the Coalition.  Thus, the Court finds it unnecessary to unravel the merits of the Motion.

III.     Conclusion

It is hereby ORDERED that the Defendants' Motion for Summary Judgment [Doc. # 31] is GRANTED and Plaintiff's Motion for Summary Judgment [Doc. # 34] is GRANTED in part and DENIED in part, as consistent with the opinion above. Specifically, the Court finds that 1) that Missouri's 2005 submissions of water quality standards did not meet the requirements of the Clean Water Act; 2) the EPA did not act arbitrarily and capriciously in approving Missouri's 2005 water quality submissions; and 3) the EPA's decision over whether to exercise its discretionary authority under Section 303(c)(4)(B) of the Act to promulgate new or revised water quality standards for Missouri is committed to the EPA's discretion at law and thus unreviewable by the Court.  The Coalition's Motion to Strike [Doc. # 44] is also DENIED.


                                                    s/ Nanette K. Laughrey
                                                    NANETTE K. LAUGHREY
                                                    United States District Judge

Dated:  February 16, 2012
Jefferson City, Missouri

21